UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ANTHONY J. MARINELLI and PAUL MARTIN III,** 8:26-cv-3133-MSS-AEP

Plaintiffs,

v.

**VIVINT, INC. and VIVINT LLC,**

Defendants.

OCT 15 2026 PM2:19
FILED - USDC - FLMD - TPA

Case No.: ____________________

## COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

Plaintiffs Anthony J. Marinelli and Paul Martin III, appearing without counsel and each on his own behalf, allege:

### I. NATURE OF THE ACTION

1. This action concerns a continuing series of alleged failures involving a home-security and smart-home system originally purchased from Vivint, Inc. on December 9, 2021, and subsequently transferred and serviced under arrangements involving Vivint LLC.

2. The controversy did not originate with Plaintiffs' February 2025 move. Problems requiring corrective service arose within weeks of the original installation at Plaintiffs' first residence in Tampa, Florida.

3. From 2022 through 2024, Plaintiffs repeatedly experienced equipment and system malfunctions, incomplete or missing camera recordings, and recurring service problems. Resolving those issues required numerous telephone calls, extended troubleshooting sessions, repeated technician appointments, and escalation to supervisory or corporate personnel.

4. Plaintiffs allege that these early problems established a history of unresolved reliability concerns before the execution of the February 2025 agreement.

5. Following the move, Plaintiffs encountered additional installation deficiencies, missing customer-owned equipment, disconnected sensors, ineffective exterior lighting, repeated failed repairs, disputed charges, and recurring camera-recording failures.

6. Plaintiffs continued paying monitoring charges and additional equipment-protection charges while attempting to obtain reliable performance and appropriate repairs.

7. Plaintiffs operate a home-based dog boarding and rescue organization and repeatedly informed Vivint that adequate lighting and reliable security recordings were important to the supervision of animals, identification of hazards, protection of property, and documentation of events.

8. Plaintiffs allege that Vivint's failures were compounded by inadequate coordination between corporate representatives and field technicians, repeated unsuccessful corrective appointments, and inaccurate or incomplete representations concerning the status of the account and proposed repairs.

9. In 2026, camera-recording failures deprived Plaintiffs of potentially material evidence concerning two separate legal disputes, including a significant family-trust matter.

10. A widespread recording outage then occurred while Plaintiffs' JAMS arbitration proceeding was pending, leading Plaintiffs to request emergency relief.

11. Vivint disputed the governing arbitration agreement, refused to fund or participate in JAMS, and no arbitrator was appointed to resolve the controversy.

12. JAMS closed its proceeding on October 1, 2026, expressly citing Respondent's lack of participation.

13. Plaintiffs seek judicial relief for the underlying contractual, property, billing, and consumer-protection injuries alleged below.

## II. PARTIES, JURISDICTION, AND VENUE

14. Plaintiff Anthony J. Marinelli is an adult citizen of Florida residing in Pasco County.

15. Marinelli is the named contracting customer and purchaser of the original Vivint system, associated with Account No. A-15447452.

16. Plaintiff Paul Martin III is an adult citizen of Florida residing in Pasco County and is Marinelli's spouse.

17. Martin personally participated in payments, service arrangements, troubleshooting, technician appointments, complaints, corporate escalations, and other events underlying this action.

18. Defendant Vivint, Inc. is the contracting entity expressly identified in the December 9, 2021 System Purchase and Services Agreement.

19. Defendant Vivint LLC is the contracting entity expressly identified in the February 7, 2025 System Equipment Purchase and Services Agreement.

20. Plaintiffs allege that the Defendants participated in, assumed responsibility for, or otherwise became responsible for different portions of the continuing account relationship, subject to proof concerning the companies' respective corporate identities, assignments, and operational responsibilities.

21. Plaintiffs invoke this Court's diversity jurisdiction under 28 U.S.C. Section 1332, subject to establishing the citizenship of each Defendant and complete diversity of citizenship.

22. Plaintiffs allege an amount in controversy exceeding $75,000, exclusive of interest and costs, subject to the legal availability and evidentiary support for the damages sought.

23. The Court has personal jurisdiction over Defendants because they contracted to provide equipment and services in Florida and directed installation, service, billing, and dispute-resolution activity toward Florida

24. Venue is proper under 28 U.S.C. Section 1391(b)(2) because substantial events giving rise to the claims occurred in Hillsborough and Pasco Counties, Florida.

## III. THE DECEMBER 2021 CONTRACT AND ORIGINAL SYSTEM

25. On December 9, 2021, Marinelli entered into a System Purchase and Services Agreement with Vivint, Inc. for Plaintiffs' residence at 6825 Mitchell Circle, Tampa, Florida.

26. The original equipment purchase totaled approximately $3,493.70.

27. The purchased system included outdoor security cameras, a doorbell camera, door and window sensors, a glass-break detector, smart-home components, a control panel, and related equipment.

28. Plaintiffs paid for the purchased equipment, which became customer-owned property.

29. Vivint continued receiving recurring payments for monitoring and associated services.

30. Section 5 of the original agreement addresses repair and replacement of defective equipment, including a five-year period for replacement of qualifying defective parts while Vivint continues providing services, subject to the agreement's stated conditions and exclusions.

31. Section 19 identifies JAMS as the administrator for covered arbitration proceedings.

32. The original agreement also contains limitations of liability and other provisions whose applicability and enforceability Plaintiffs dispute to the extent permitted by law.

## IV. EARLY FAILURES AT MITCHELL CIRCLE: JANUARY 2022 THROUGH 2024

33. Problems requiring corrective service began almost immediately after the original installation.

34. In January 2022, Plaintiffs contacted Vivint concerning equipment or service problems, and a technician appointment was ultimately scheduled for January 26, 2022.

35. The need for service within weeks of installation was the beginning of an extended pattern rather than an isolated event.

36. During 2022, 2023, and 2024, Plaintiffs experienced recurring system and camera problems, including incomplete event captures, missing recordings, service interruptions, and equipment malfunctions.

37. Plaintiffs repeatedly contacted Vivint to report those conditions.

38. Anthony Marinelli personally spent substantial time in extended customer-service and technical-support calls attempting to obtain troubleshooting, escalation, and technician appointments.

39. Plaintiffs allege that certain calls lasted multiple hours and that obtaining an actual service visit frequently required extensive troubleshooting and repeated contact.

40. Plaintiffs contend that the burden of securing corrective service was unreasonable given the continuing payments for a professionally installed and serviced security system.

41. Vivint performed remote troubleshooting on numerous occasions, but Plaintiffs allege that recurring reliability concerns were not permanently corrected.

42. Plaintiffs also accommodated multiple technician appointments and service interventions at Mitchell Circle.

43. Certain technician visits addressed individual symptoms without resolving the broader pattern of camera and system unreliability.

44. Plaintiffs experienced occasions when the cameras failed to capture an expected event or recorded only part of an incident.

45. Plaintiffs reported missed-capture concerns to Vivint before their February 2025 relocation.

46. Plaintiffs allege that these earlier missed recordings were particularly troubling because preserving events was an important reason for purchasing and maintaining the system.

47. Plaintiffs also escalated concerns beyond ordinary first-level support during the Mitchell Circle period, including complaints regarding recurring failures and the difficulty obtaining effective service.

48. The complete dates, durations, identities of representatives, diagnostic results, technician findings, and internal dispositions of these earlier interactions are reflected in records maintained by Vivint.

49. Plaintiffs possess portions of their own supporting records but do not presently have Vivint's complete historical call recordings, technician notes, and internal account documentation.

50. Plaintiffs allege that Vivint's records will demonstrate the frequency and duration of their earlier attempts to obtain assistance and the repeated nature of the reported problems.

51. Additional service activity occurred in December 2023, including technician appointments.

52. During that period, Plaintiffs also requested and obtained another copy of the December 2021 agreement directly from Vivint.

53. Plaintiffs allege that their request for the original agreement and continuing service activity further demonstrate that the original contractual relationship remained relevant well before the 2025 move.

54. By the end of 2024, Plaintiffs had experienced years of recurring service and recording concerns involving equipment originally purchased under the 2021 agreement.

55. Plaintiffs contend that these events constitute the foundation of their contractual claims and establish that the underlying controversy predated the 2025 relocation.

## V. ADDITIONAL PAID EQUIPMENT PROTECTION

56. In approximately August 2024, Plaintiffs began paying for additional equipment protection.

57. Plaintiffs continued making those payments alongside regular monitoring and service charges.

58. Plaintiffs understood the additional protection to provide equipment-related repair or replacement benefits subject to the applicable plan terms.

59. Nevertheless, obtaining service for defective equipment frequently required further lengthy troubleshooting and escalation.

60. Plaintiffs experienced resistance when requesting repair or replacement of a malfunctioning doorbell camera and ultimately had to pursue additional contacts before the issue was addressed.

61. Plaintiffs continued paying for equipment protection during the later transfer deficiencies, missing sensors, defective lighting, and recurring recording failures.

62. Plaintiffs allege that Vivint's handling of service requests is relevant to their broader history of attempting to obtain corrective performance.

63. Plaintiffs do not seek to adjudicate separate claims against NRG Protects Inc. under a distinct protection-plan agreement in this action.

## VI. FEBRUARY 2025 MOVE AND DEFICIENT TRANSFER

64. In February 2025, Plaintiffs moved to 22926 Sonoma Lane, Lutz, Florida.

65. Vivint was retained to transfer and reinstall the customer-owned system and provide additional equipment and services.

66. On February 7, 2025, Marinelli entered into a new agreement identifying Vivint LLC as the contracting entity.

67. That agreement expressly references system components already owned before its effective date.

68. Vivint technician Mike performed substantial portions of the transfer and installation.

69. During the installation, Mike refused to install Vivint-compatible Nest thermostats that Plaintiffs expected to be included.

70. Plaintiffs contacted Vivint while Mike was present, and a supervisor advised that the work was authorized.

71. Mike nevertheless refused to perform the installation.

72. Plaintiffs complained about Mike's handling of the work and the quality and completeness of the transfer.

73. Vivint subsequently assigned a different technician who addressed additional issues.

74. Further investigation revealed that multiple customer-owned window sensors had not been installed and could not be located.

75. Customer-owned water-detection equipment was also missing or unaccounted for.

76. A glass-break sensor had been physically mounted on the wall but was never connected or activated.

77. That sensor remained nonfunctional for more than one year while Plaintiffs continued paying monitoring and protection charges.

78. Plaintiffs allege that these deficiencies resulted from the paid transfer and installation work.

79. During later corporate discussions, Vivint characterized replacement of certain missing sensors as a goodwill accommodation.

80. Plaintiffs disputed that characterization because the sensors were replacements for customer-owned equipment that had disappeared during Vivint's work.

81. Plaintiffs allege that they were entitled to competent handling and accounting of their property, not merely discretionary replacement of missing items.

## VII. EARLY POST-MOVE SERVICE AND WI-FI INVESTIGATION

82. On February 26, 2025, technician Cody attended the residence concerning continuing equipment problems.

83. Vivint discussed a Wi-Fi AirBridge as a possible solution but subsequently advised that the device was unavailable.

84. Plaintiffs raised connectivity concerns and cooperated with Vivint's investigation of whether their network could be contributing to the camera problems.

85. Vivint installed or recommended wireless repeaters or boosters.

86. Plaintiffs were advised during multiple interactions that Wi-Fi did not appear to be the principal cause of the recurring failures.

87. The problems continued despite those interventions.

88. On February 27, 2025, Executive Resolutions became involved and applied three months of monitoring credits under reference CRE-7771131.

89. Additional service activity continued in March 2025.

90. Plaintiffs allege that the early escalation, account credit, and repeated visits demonstrate substantial post-move difficulties layered upon the preexisting reliability history.

## VIII. EXTERIOR DOG-CARE LIGHT AND PRIOR SAFETY WARNINGS

91. Plaintiffs operate TheDoodPack, a home-based dog boarding and rescue organization.

92. Their outdoor dog-care area is used by personal animals and dogs entrusted to their care.

93. Plaintiffs relied upon exterior lighting and surveillance to identify hazards and supervise dogs at night.

94. During the February 2025 move, Mike installed the Vivint exterior light in the screened patio instead of the dog-care area.

95. The screened patio already had substantial lighting.

96. Mike explained that the existing camera in the dog area was too old to support the light.

97. Plaintiffs contended that Vivint should provide a compatible solution rather than leave the equipment where it failed to serve its intended purpose.

98. The problem remained unresolved for more than one year.

99. Plaintiffs repeatedly advised Vivint that inadequate visibility created risks involving foreign objects, debris, and other hazards that dogs might encounter.

100. Plaintiffs also explained the implications for animals boarded or rescued through their home-based operations.

101. In late April 2026, Plaintiffs specifically discussed the safety concern with Executive Resolutions representative Terry.

102. Terry arranged a technician appointment concerning the light.

103. On May 3, 2026, Plaintiffs' approximately six-month-old Husky puppy, Porter, died after ingesting a foreign object.

104. The death occurred approximately one week after Plaintiffs had again warned Vivint about ingestion-related hazards and nighttime visibility.

105. Plaintiffs do not allege that the lighting deficiency, standing alone, conclusively establishes that Vivint caused Porter's death.

106. Plaintiffs allege that the incident demonstrates the seriousness of the safety concern they had repeatedly communicated.

107. Approximately eight hours after Porter's death, a Vivint technician arrived for a previously scheduled appointment.

108. The technician lacked adequate work-order instructions concerning the light and declined to perform that work.

109. Plaintiffs had to reschedule the repair despite the prior corporate arrangements.

110. In May 2026, Vivint finally moved the light to the dog-care area.

111. The light stopped functioning approximately one day later.

112. Plaintiffs promptly notified Terry, but the problem remained unresolved when his Executive Resolutions matter ended.

113. A later technician identified a pinched wire and performed corrective work.

114. The light again failed by approximately the following morning.

115. Plaintiffs promptly reported that failure to Heston.

116. On August 25, 2026, another technician temporarily restored the light by adjusting an antenna or connector.

117. The light failed again approximately September 3, 2026.

118. Plaintiffs allege that no durable correction has been provided despite repeated service attempts and notice.

119. Plaintiffs continue to regard the condition as a material concern for the safe supervision of animals at their property.

## IX. MARCH 12, 2026 RECORDING FAILURE AND CORPORATE COMPLAINT

120. On March 12, 2026, Plaintiffs experienced a significant missed camera capture involving an interaction relevant to a separate utility-service dispute.

121. The system failed to preserve the complete expected recording.

122. Plaintiffs contacted Vivint and escalated the matter to supervisor Dusti Farley.

123. Dusti reviewed the account and acknowledged an extensive history of problems, describing account metrics as 'less than savory.'

124. Dusti expressly authorized Plaintiffs to record the conversation.

125. Plaintiffs possess that recording.

126. Dusti advised that certain internal records and call documentation would require legal process before Vivint would produce them.

127. Plaintiffs thereafter submitted a detailed written corporate complaint.

128. That complaint addressed the missed capture and broader history of repeated failures.

## X. TERRY'S EXECUTIVE REVIEW AND MIKE'S RETURN

129. Executive Resolutions representative Terry began a broader review of Plaintiffs' account.

130. Terry advised that he personally reviewed approximately twelve prior calls and that additional personnel were reviewing further recordings.

131. The review identified additional missing or disconnected equipment and unresolved transfer deficiencies.

132. Terry discussed possible equipment replacement and higher-level technical assistance.

133. Terry represented that a specially qualified technician would attend the residence and that the appointment required substantial advance scheduling.

134. Plaintiffs were told the technician would travel a significant distance and would require a substantial block of time.

135. Plaintiffs waited several weeks.

136. When the appointment occurred, Mike arrived.

137. Mike was the same technician whose February 2025 installation had already been the subject of Plaintiffs' complaint.

138. Mike had previously stated that he lived only minutes from the property.

139. Mike arrived without adequate information concerning the broader Executive Resolutions review.

140. He performed limited work and left after a brief visit.

141. Plaintiffs immediately contacted Terry and questioned the reassignment.

142. Terry expressed surprise and indicated that Mike's assignment was inconsistent with the intended plan.

143. Plaintiffs allege that this sequence demonstrates inadequate corporate oversight, work-order preparation, and coordination of corrective service.

## XI. TERRY'S CLOSURE, EXTERNAL COMPLAINTS, AND DISPUTED CHARGE

144. Terry's Executive Resolutions matter ended while material issues remained unresolved.

145. Plaintiffs had already reported that the relocated dog-park light had failed again.

146. Plaintiffs subsequently filed Better Business Bureau Complaint No. 24850423.

147. Vivint represented through that process that it had replaced sensors, relocated the light, and provided account credits.

148. Plaintiffs disputed any suggestion that those actions fully resolved the continuing camera and equipment problems.

149. Plaintiffs also submitted a complaint to the Florida Attorney General's Office, acknowledged on June 15, 2026.

150. A separate approximately $180 charge relating to the light relocation appeared after an intervening billing cycle and after the dispute had escalated externally.

151. Plaintiffs objected before the charge processed.

152. The charge nevertheless processed and was not returned or credited for more than one week.

153. Plaintiffs allege that the charge was inconsistent with their understanding of the corrective service arrangement.

154. Plaintiffs do not allege that the timing alone conclusively proves retaliation.

## XII. HESTON'S HANDLING OF THE DISPUTE

155. In June 2026, Executive Resolutions representative Heston became involved.

156. Heston again raised Wi-Fi as a possible cause of the camera problems.

157. Plaintiffs explained that connectivity had already been investigated for more than a year.

158. Plaintiffs also explained that some failures occurred while live camera feeds continued functioning.

159. Heston discussed optional Playback/DVR functionality.

160. Plaintiffs objected that they were seeking repair of existing ordinary recording functions, not an additional paid product.

161. Heston acknowledged that optional Playback/DVR was not required for ordinary event capture.

162. Plaintiffs allege that Heston did not provide a comprehensive technical explanation for the recurring failures.

163. Disagreements developed concerning his descriptions of the discussions and Plaintiffs' willingness to accept corrective assistance.

164. Plaintiffs repeatedly clarified in writing that they remained willing to permit legitimate repairs.

165. Plaintiffs opposed being required to purchase or finance additional equipment or extend their service agreement merely to obtain correction of existing deficiencies.

166. On July 1, 2026, Plaintiffs submitted a formal demand to Vivint Legal and Executive Resolutions.

167. Heston confirmed receipt.

168. Plaintiffs later supplemented their demand to reflect additional developments.

169. Vivint declined the requested monetary resolution.

## XIII. JULY 7, 2026 TRUST-RELATED RECORDING FAILURE

170. On July 7, 2026, at approximately 9:35 a.m., Paul Martin contacted Vivint concerning camera-event problems.

171. Vivint performed troubleshooting, including a system reboot.

172. The system was represented as operational.

173. Shortly after 10:00 a.m., Anthony Marinelli's father arrived at the residence.

174. A conversation lasting approximately 90 minutes occurred within the backyard camera's field of view.

175. The conversation concerned matters potentially relevant to Anthony's ongoing family-trust proceedings, including disputes over trust administration, accounting, and distribution.

176. The expected recording was not preserved.

177. The event history showed activity around 9:07 a.m. and 11:51 a.m., but the intervening conversation was absent.

178. Plaintiffs allege that the recording could have been materially useful to the separate trust-related proceedings.

179. Plaintiffs promptly notified Vivint and requested an explanation.

180. No comprehensive diagnostic investigation established why the event had not been captured.

181. Plaintiffs do not allege that the missing recording conclusively determines the outcome of the separate proceedings.

182. They allege that its loss was especially serious because Vivint had already received notice that recurring recording failures were affecting potentially important legal evidence.

## XIV. SYSTEM-WIDE RECORDING OUTAGE DURING JAMS

183. Plaintiffs commenced consumer arbitration with JAMS in July 2026 under Section 19 of the original agreement.

184. Beginning approximately July 20, 2026, nearly all cameras stopped generating or retaining normal event recordings.

185. Live video continued to function.

186. Plaintiffs preserved contemporaneous screen recordings demonstrating the difference between functioning live feeds and missing event histories.

187. Plaintiffs notified Vivint Legal and Executive Resolutions on July 25 and provided further notice on August 3.

188. Plaintiffs also supplied updated evidence and sought emergency relief from JAMS on August 6.

189. The emergency request sought technical inspection, restoration of event recording, repair or replacement of defective equipment, correction of the light, preservation of relevant records, and identification of the cause of the outage.

190. JAMS advised on August 7 that it would proceed with the emergency-arbitrator appointment process.

191. The outage continued until approximately 11:22 p.m. on August 10.

192. The lost recordings were not restored.

193. The outage and related notices were documented in correspondence associated with the pending JAMS proceeding.

194. Further recording interruptions occurred in September 2026.

## XV. AUGUST 25 TECHNICIAN ASSESSMENT OF THE ORIGINAL PANEL

195. On August 25, 2026, a Vivint technician attended the residence.

196. During that visit, the technician discussed possible limitations of the original control panel in supporting Plaintiffs' equipment configuration.

197. The technician identified the original panel as a potential contributor to the continuing problems and discussed a newer panel as a possible solution.

198. Plaintiffs preserved video evidence of the technician's statements.

199. Plaintiffs allege that this assessment is material because the panel originated with the 2021 system and reliability problems began under the original agreement.

200. Plaintiffs requested a comprehensive explanation and corrective plan.

201. Vivint has not provided a documented final determination or completed a permanent panel replacement addressing that concern.

202. Plaintiffs seek production of relevant technical records, including panel diagnostics, compatibility information, service recommendations, and records concerning known limitations of the equipment model.

## XVI. JAMS ARBITRATION AND VIVINT'S REFUSAL TO PARTICIPATE

203. The December 2021 agreement names Vivint, Inc. and contains a JAMS arbitration provision.

204. Plaintiffs commenced JAMS Arbitration Reference No. 5460004238 in July 2026.

205. Plaintiffs paid the assessed $250 consumer fee.

206. JAMS assessed company-side fees associated with the proceeding and emergency request.

207. Vivint's counsel asserted that the February 2025 agreement superseded the earlier agreement and required AAA arbitration.

208. Plaintiffs disputed that position because substantial claims arose before February 2025 and because the original equipment remained central to the controversy.

209. Vivint's counsel expressly refused to pay JAMS fees on multiple documented occasions, including correspondence in August and September 2026.

210. Plaintiffs contend that three separate written refusals demonstrate Vivint's sustained position.

211. Plaintiffs remained willing to arbitrate but declined to advance Vivint's company-side fees.

212. No arbitrator was appointed to determine the competing contractual positions or the merits.

213. JAMS ultimately closed the proceeding effective October 1, 2026, expressly stating that the matter was closed because of Respondent's lack of participation.

214. Plaintiffs acknowledge that JAMS's administrative closure did not itself decide whether the 2021 or 2025 arbitration clause legally governs the dispute.

215. Plaintiffs contend that Vivint's conduct and the administrative closure are material to determining whether arbitration may now be invoked to prevent litigation.

## XVII. THE COMPETING ARBITRATION AGREEMENTS

216. Plaintiffs contend that the December 2021 agreement governs claims that arose under that agreement and remained unresolved before the February 2025 transaction.

217. The February 2025 agreement contains an AAA arbitration provision, a delegation provision addressing specified arbitrability questions, and language purporting to supersede earlier agreements.

218. Plaintiffs dispute that the later agreement automatically extinguished accrued substantive claims or necessarily transferred every preexisting controversy to AAA.

219. Plaintiffs further contend that Vivint's unilateral assertion of its preferred forum did not constitute a neutral adjudication of the disputed contractual question.

220. Plaintiffs recognize that federal arbitration law may require the Court to determine which agreement governs the threshold forum dispute.

221. Plaintiffs request that the Court consider the agreements, the dates when the claims arose, the continuing original-equipment issues, the arbitration correspondence, and Vivint's refusal to participate in JAMS.

222. Plaintiffs do not assert that JAMS's closure automatically constitutes a judicial finding of waiver or default.

223. Plaintiffs contend that the complete circumstances warrant adjudication under the Federal Arbitration Act and applicable Eleventh Circuit precedent.

## XVIII. COUNT I - BREACH OF THE DECEMBER 2021 AGREEMENT

224. Plaintiffs incorporate the preceding factual allegations to the extent relevant to this count.

225. Marinelli entered into the December 2021 agreement with Vivint, Inc.

226. Marinelli performed his payment obligations, including payment for the purchased equipment and recurring services.

227. The agreement included obligations concerning installation, monitoring, repair, and replacement of qualifying defective equipment.

228. Plaintiffs allege that Vivint, Inc. failed to perform material contractual obligations adequately, including through repeated unresolved equipment and service deficiencies arising during the original contractual relationship.

229. Plaintiffs further allege that qualifying defective equipment was not repaired or replaced in accordance with the applicable contractual provisions, subject to proof concerning the relevant equipment, dates, and conditions.

230. Marinelli suffered damages resulting from the alleged breaches.

## XIX. COUNT II - BREACH OF THE FEBRUARY 2025 AGREEMENT

231. Plaintiffs incorporate the relevant preceding factual allegations.

232. Marinelli entered into the February 2025 agreement with Vivint LLC.

233. The agreement covered services and system components, including components owned before its effective date.

234. Plaintiffs allege that Vivint LLC failed to perform applicable installation, repair, maintenance, and service obligations adequately.

235. Those failures included deficient transfer work, unresolved equipment problems, repeated unsuccessful corrective visits, and continuing service deficiencies.

236. Marinelli suffered damages resulting from the alleged breaches.

## XX. COUNT III - DAMAGE TO OR LOSS OF CUSTOMER-OWNED PROPERTY

237. Plaintiffs incorporate the relevant preceding factual allegations.

238. Plaintiffs owned equipment that Vivint personnel were retained to transfer, handle, and reinstall.

239. Certain window sensors and water-detection equipment were not properly accounted for following the transfer.

240. A glass-break sensor was physically installed but left disconnected and nonfunctional for an extended period.

241. Plaintiffs allege that the handling of customer-owned property failed to meet applicable obligations and caused recoverable loss or damage.

242. Plaintiffs seek the value of property loss or damage established by the evidence under a legally available theory of recovery.

## XXI. COUNT IV - FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

243. Plaintiffs incorporate the relevant preceding factual allegations.

244. Defendants engaged in trade or commerce in Florida.

245. Plaintiffs allege unfair or deceptive conduct concerning equipment transfers, descriptions of replacement equipment, recurring charges, service representations, and the handling of corrective work.

246. Plaintiffs specifically allege that replacement of missing customer-owned equipment was characterized as a goodwill benefit despite the equipment having disappeared during the paid transfer process.

247. Plaintiffs further allege that disputed corrective-service charges were processed despite advance notice of the dispute.

248. Plaintiffs seek actual damages and other relief authorized by Florida Statutes Sections 501.201-501.213, subject to proof of the statutory elements and applicable limitations.

## XXII. COUNT V - DECLARATORY RELIEF CONCERNING ARBITRATION

249. Plaintiffs incorporate the relevant preceding factual allegations.

250. An actual controversy exists concerning the effect of the December 2021 and February 2025 arbitration provisions.

251. Plaintiffs invoked the original agreement's JAMS provision and satisfied their consumer filing obligation.

252. Vivint asserted that the later agreement required AAA arbitration and refused to fund the JAMS proceeding.

253. JAMS closed the proceeding without an arbitrator determining the parties' competing contractual positions.

254. Plaintiffs request an appropriate determination of the parties' rights and obligations under the applicable agreements and the Federal Arbitration Act.

## XXIII. DAMAGES AND CONTINUING HARM

255. Plaintiffs allege losses involving equipment, payments, disputed charges, and reduced value of services.

256. Plaintiffs also allege repeated loss of potentially important recordings and continuing concerns involving the outdoor lighting and camera system.

257. Plaintiffs' home-based pet-care operations make adequate security and nighttime visibility particularly important, although the legal availability of business-related damages remains subject to the governing agreements and applicable law.

258. Plaintiffs previously asserted a $1,750,000 arbitration demand. They seek the amount of damages legally recoverable and supported by the evidence rather than asserting that the prior demand itself establishes the value of their claims.

## XXIV. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request:

A. Judgment on each claim established by the evidence;

B. Compensatory and actual damages as authorized by law;

C. Recovery of proven equipment losses, overcharges, and payments for deficient services where legally recoverable;

D. Relief authorized under Florida's Deceptive and Unfair Trade Practices Act;

E. Appropriate declaratory relief concerning the competing arbitration provisions;

F. Prejudgment and post-judgment interest where authorized;

G. Taxable costs and any other recoverable expenses;

H. Appropriate equitable relief concerning equipment, account records, and continuing contractual obligations, to the extent legally available; and

I. Such other relief as the Court deems just and proper.

## XXV. JURY DEMAND

Plaintiffs demand a jury trial on all issues legally triable by jury, subject to the Court's determination of any applicable contractual jury waiver.

**Anthony J. Marinelli**
Plaintiff, Pro Se
22926 Sonoma Lane
Lutz, Florida 33549
anfroneee@gmail.com
(727) 589-6485

Signature: ______________ Date: 10/08/2026

**Paul Martin III**
Plaintiff, Pro Se
22926 Sonoma Lane
Lutz, Florida 33549
pmmiii@iCloud.com

Signature: ______________ Date: 10/08/2026